# Exhibit C

| 89TH CONGRESS *2d Session* | HOUSE OF REPRESENTATIVES | REPORT No. 1741 |
|---|---|---|

## CONVENTION ON THE SETTLEMENT OF INVESTMENT DISPUTES

JULY 19, 1966.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. FASCELL, from the Committee on Foreign Affairs, submitted the following

# REPORT

[To accompany H.R. 15785]

The Committee on Foreign Affairs, to which was referred the bill (H.R. 15785), to facilitate the carrying out of the obligations of the United States under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, signed on August 27, 1965, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

COMMITTEE ACTION

The executive communication requesting the enactment of legislation to facilitate carrying out U.S. obligations under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States was submitted to the Speaker of the House of Representatives on May 23, 1966, and referred to the Committee on Foreign Affairs. On June 20, 1966, legislation embodying the executive branch request was introduced by Representative Dante B. Fascell as H.R. 15785. The Subcommittee on International Organizations and Movements of the Committee on Foreign Affairs held an open session hearing on this legislation on June 28, receiving testimony on behalf of the bill from representatives of the Departments of State and Treasury. The subcommittee further discussed H.R. 15785 on June 29, 1966, and ordered it reported favorably to the full committee. The Committee on Foreign Affairs considered the bill on July 19, 1966 and unanimously ordered it reported favorably to the House.

BACKGROUND

The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States originated under the auspices of the International Bank for Reconstruction and Develop-

65–006

ment (World Bank). Its primary purpose is to improve the climate for private investment in countries which seek to attract foreign capital, particularly the economically developing countries, and thus to stimulate a larger flow of private investment into those countries. While benefiting the developing countries, the convention should also prove of considerable value to U.S. investors, and those of other capital-exporting countries, by providing them with a novel international forum for orderly and impartial settlement of disputes which may arise between private investors and the host governments.

The U.S. Senate consented to the ratification of this convention on May 16, 1966, by a unanimous vote. Several weeks later, on June 10, 1966, the U.S. instrument of ratification was deposited with the World Bank. To date, 8 countries have ratified the convention and 35 others have signed it and are in various stages of their ratification process.

The following features of the convention warrant particular attention:

### 1. *Voluntary nature of the convention*

Aside from the principle of international settlement of disputes between individuals or companies and states, the most important principle of the convention is that the settlement of disputes shall be completely voluntary. The United States, by adhering to the convention, has not bound itself to resort to the convention's procedures—conciliation or arbitration—in any given case. Nor does any American investor bind himself to resort to the convention's procedures by investing in a country party to the convention. The convention simply offers the facilities for an impartial settlement of a dispute, if and when the parties agree to such settlement.

Consent to use these facilities may be given in two ways: (1) After a dispute has arisen, the investor and the host country may agree to submit it to conciliation or arbitration; or (2) the investor and the host country may agree in advance, in an investment contract or in a separate instrument, that all disputes or all disputes of a certain character shall be submitted to conciliation or arbitration in accordance with the convention's rules. What adherence to the convention signifies is agreement on the general principle that investment disputes are to be settled in an orderly and amicable way. Further, the existence of the convention is expected to provide a helpful point of reference for potential investors and host countries in discussing in advance what is to be done if difficulties develop in the proposed investment.

### 2. *Disputes subject to the convention*

In the terms of article 25(1), the jurisdiction of the International Center for Settlement of Investment Disputes is limited to a "legal dispute arising directly out of an investment." As a practical matter, it is expected that arbitration and conciliation will be accepted only for disputes over the extent or nature of legal rights or the compensation to be made for breach of a legal obligation. The term "investment" is not defined in the convention. This was intentional. If two parties to a dispute agree to submit to the jurisdiction of the Center, there should be no rigid definition of investment to oust the Center from jurisdiction. The term "investment dispute" is used only to make clear that ordinary commercial disputes are not intended to be covered.

In case of a doubt, the tribunal would be the judge of its own jurisdiction.

### 3. *Parties to the dispute*

Article 25(2) requires that one party be a contracting state, or one of such a nation's designated subdivisions or agencies, and that the other party be a national of another contracting state. Thus, neither intergovernmental disputes, nor disputes between a government and its own nationals, are within the jurisdiction of the Center. There is one exception for corporations (or other legal entities) which the parties agree should be treated as foreign for purposes of the convention. Thus, for example, a subsidiary of a U.S. firm could be treated as a U.S. national, even if, for other reasons, it was locally incorporated.

### 4. *Arbitration as exclusive remedy*

The convention states that all agreements to arbitration under the convention, unless the parties provide otherwise, shall be exclusive of any other remedy. All awards shall be final and binding. There is a limited provision for review of the award by the tribunal itself or by the Center in the event of certain irregularities, but basically arbitration under the convention's rules is intended to be a self-contained and definitive resolution of a dispute. By becoming parties to the convention, states bind themselves to honor awards rendered pursuant to the convention, regardless of who the parties were to that arbitration. Thus even if the arbitration was, for example, between a Canadian company and the Government of, say, Nigeria, an award would be binding and enforcible in the United States.

### PURPOSE OF LEGISLATION

The purpose of H.R. 15785 is to facilitate carrying out U.S. obligations under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States.

Section 2 of the bill provides that the President may appoint such representatives and Panel members as may be called for under the convention. The convention establishes under the auspices of the World Bank the International Center for Settlement of Investment Disputes to conciliate or arbitrate disputes which may arise between private foreign investors of one country and the government of another country. The Center will consist of an Administrative Council and will maintain a Panel of Conciliators and a Panel of Arbitrators. Each contracting state is authorized to name one representative to the Administrative Council, and four persons to each Panel. The authority of section 2 will enable the President to make the requisite appointments on behalf of the United States.

Section 3 of H.R. 15785 deals with enforcement of arbitral awards.

Section 3(a) of the bill does three things:

(i) It provides that the pecuniary obligations imposed by an arbitral award rendered pursuant to the convention shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. Article 54(1) of the convention limits the obligation to enforce such an award to the monetary damages included in that award. If an action is brought in a U.S. district court to enforce the final judgment of a State court, it is, of course, given full faith and credit

in the Federal court. Section 3(a) would give the same status to an arbitral award.

(ii) The award of an arbitral tribunal under the convention is to be given the status of a right arising under a treaty of the United States. Article III, section 2, clause 1 of the Constitution extends Federal judicial power to cases arising under the Constitution and laws of the United States and to treaties made under their authority, and section 3(a) of the bill simply makes clear that actions on arbitral awards under the convention fall into the latter category for purposes of Federal court jurisdiction.

(iii) Finally, section 3(a) of the bill provides that the Federal Arbitration Act shall not apply to enforcement of arbitral awards made under the convention. The Federal Arbitration Act permits courts to vacate an award on grounds of corruption, fraud, partiality, misconduct, or other prejudicial conduct of an arbitrator, or where arbitrators exceed their powers. Under article 52 of the convention, however, such challenges to an award may be made only through the annulment proceedings provided for in the convention. Section 3(a) of the bill, therefore, makes clear that the inconsistent provisions of the Federal Arbitration Act will not apply.

Section 3(b) of the bill would give U.S. district courts exclusive jurisdiction over actions to enforce arbitral awards under the convention. Article 54(1) of the convention provides that a contracting state that is a federal state may meet its enforcement obligations through its federal courts. The United States suggested this provision in order to be able to provide in the United States for a uniform procedure for enforcement of awards rendered pursuant to the convention. Under the bill jurisdiction of the Federal courts would be "exclusive." The Federal district courts of the Panama Canal Zone, Guam, and the Virgin Islands are given jurisdiction of enforcement actions through reference to 28 U.S.C. 460, which includes those courts with the district courts of the 50 States.

### EXECUTIVE BRANCH POSITION

Representatives of the Department of State and the Treasury Department testified on behalf of H.R. 15785. The position of the executive branch in favoring the enactment of this legislation was summarized in the following letter from the Secretary of the Treasury to the Speaker of the U.S. House of Representatives:

THE SECRETARY OF THE TREASURY,
*Washington, D.C., May 21, 1966.*

Hon. JOHN W. MCCORMACK,
*Speaker of the House of Representatives,*
*Washington, D.C.*

DEAR MR. SPEAKER: President Johnson transmitted to the Senate on February 16, 1966, for advice and consent to ratification the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States. On May 16, the Senate adopted a resolution of ratification of the convention. So that the Congress will have before it the administration's plan for giving effect to the convention, I transmit herewith a draft bill to carry out the obligations of the United States under the convention.

The convention would establish an International Center for Settlement of Investment Disputes (the Center) under the auspices of the International Bank for Reconstruction and Development (the World Bank). The Center would be available on a voluntary basis to settle by conciliation or arbitration investment disputes between private foreign investors and sovereign states in which investments are made.

Section 2 of the bill provides that the President may appoint such representatives to the Center and Panel members as may be provided for under the convention. The Center would have an Administrative Council which would be composed of one representative of each contracting state and one alternate. The Center would also maintain a Panel of Arbitrators and a Panel of Conciliators and each contracting state would be entitled to name four persons to each Panel. Section 3 provides that U.S. district courts shall have exclusive jurisdiction to enforce awards rendered by arbitral tribunals under the convention. It also provides for enforcement of the pecuniary obligations imposed by such awards.

The Secretary of State joins me in submitting this bill to the Congress. It is the belief of both of us that the convention will add significantly to the legal protection now available for private foreign investment. We recommend enactment of the proposed legislation as soon as possible.

It would be appreciated if you would lay the draft bill before the House of Representatives. A similar bill has been transmitted to the President of the Senate.

The Department has been advised by the Bureau of the Budget that enactment of this proposal would be consistent with the administration's objectives.

Sincerely yours,

HENRY H. FOWLER.

A BILL To facilitate the carrying out of the obligations of the United States under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, signed on August 27, 1965, and for other purposes

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Convention on the Settlement of Investment Disputes Act of 1966."

SEC. 2. The President may make such appointments of representatives and panel members as may be provided for under the Convention.

SEC. 3. (a) An award of an arbitral tribunal rendered pursuant to Chapter IV of the Convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the Convention.

(b) The district courts of the United States (including the courts enumerated in title 28, United States Code, section 460) shall have exclusive jurisdiction over actions and pro-

ceedings under paragraph (a) of this section, regardless of the amount in controversy.

### COMMITTEE RECOMMENDATION

While the Convention on the Settlement of Investment Disputes is not an issue before the House, the committee believes that the case for the enactment of H.R. 15785 is directly related to the purposes and the merits of the convention.

One of the deterrents to private capital investment in less developed countries has been the fear that the investment will be expropriated or will be made subject to burdensome conditions not anticipated at the time of the investment. This committee and the Congress have addressed themselves to this problem in various provisions of the Foreign Assistance Act, as amended, including provisions establishing the investment guarantee program operated by the Agency for International Development. In a very real sense, the Convention on the Settlement of Investment Disputes represents another step in the direction of improving the international investment climate. By providing a mechanism for impartial resolution of disputes between investors and host governments, the convention will provide a meaningful assurance of fair treatment both for the investor and host country alike. It will establish an international forum for the settlement of disputes that are halfway between government-to-government disputes and disputes subject to adjudication in the courts of a single state. This is perhaps the convention's greatest innovation and it argues strongly in favor of the enactment of legislative proposals embodied in H.R. 15785.

The committee also took notice of the fact that the enactment of this legislation will not impose any financial obligations on the U.S. Government for the immediate future. The World Bank has agreed to provide the International Center for Settlement of Investment Disputes with office space free of charge and to underwrite the basic overhead expenditures of the Center for a period of years. In the light of these undertakings, the United States will not be required to make any financial contribution to the Center in the foreseeable future.

Because of the considerations outlined above, the committee recommends the enactment of H.R. 15785.

○