# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

WEBUILD S.P.A.,

               Plaintiff,

       v.

ARGENTINE REPUBLIC,

               Defendant.

Civil Action No. 21-2464 (RBW)

---

## MEMORANDUM OPINION

The plaintiff, Webuild S.p.A., formerly known as Impreglio S.p.A., brings this civil action against the defendant, the Argentine Republic, pursuant to the Investment Disputes Act, 22 U.S.C. § 1650a, seeking recognition and enforcement of an arbitral award issued in favor of the plaintiff and against the defendant by an international tribunal following proceedings in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). See Complaint ("Compl.") ¶ 1, ECF No. 1. Currently pending before the Court is the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Motion to Dismiss ("Def.'s Mot." or the "defendant's motion") at 1, ECF No. 9. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 10; (2) the defendant's Reply Memorandum of Law of the Republic of Argentina in Further Support of its Motion to Dismiss ("Def.'s Reply"), ECF No. 11; (3) the Plaintiff's Notice of Supplemental Authority ("Pl.'s First Notice of Suppl. Authority"), ECF No. 12; (4) the defendant's Response to Notice of Supplemental Authority ("Def.'s Resp. to Pl.'s First Notice of Suppl. Authority"), ECF No. 13; (5) the Plaintiff's Notice of Supplemental Authority ("Pl.'s 2d Notice of Suppl. Authority"), ECF No. 14; and (6) the defendant's Response to Notice of Supplemental Authority ("Def.'s Resp. to Pl.'s 2d Notice of Suppl. Authority"), ECF No. 15.

# I.    BACKGROUND

## A.    Factual Background

In October 1999, the plaintiff, "a corporation organized under the laws of Italy," Compl. ¶ 2, "as part of a consortium with other international companies, was awarded a water and sewage service concession in a certain area within the Province of Buenos Aires[,]" id. ¶ 7. "[The p]laintiff and its partners thereafter formed and funded [ ] an Argentinian [c]ompany[,]" which executed a contract in December 1999 with the defendant "to provide water and sewage services to an area within [Buenos Aires]." Id. Beginning in 2001, the plaintiff "fac[ed] considerable difficulty in obtaining payments for its services from customers[,]" id. ¶ 10, due to the "severe economic crisis in Argentina at the time[,]" id. ¶ 12. Then, "throughout 2002[,]" the defendant "'pesified'[2] utilities contracts . . . at parity level and froze tariffs; prevented [the plaintiff] from billing work charges; and suspended [the plaintiff's] right to interrupt water service to customers who had not paid their bills." Id. ¶ 13. And, "in July 2006, [the defendant entirely] terminated the [contract.]" Id. ¶ 15.

"The relationship . . . between [the p]laintiff and [the defendant] is governed by the Agreement between the Argentine Republic and the Italian Republic on the Promotion and Protection of Investments[,]" id. ¶ 16, a bilateral investment treaty in which both the Argentine Republic and the Italian Republic agreed, inter alia, to "accord[] fair and equitable treatment[,]" id. ¶ 18, to "[i]nvestments made by investors of each [c]ontracting [p]arty[,]" id. (first alteration in original), and to "refer[] to international arbitration[,]" id. ¶ 23, any disputes regarding investments that "[cannot] be settled through friendly consultation between the parties to the dispute[,]" id., or resolved by "the competent judicial or administrative courts of the [p]arty in

---

[2] "Contracts are 'pesified' when the Argentinian peso has been unpegged from the [United States] dollar, thereby rendering them much cheaper." Id. ¶ 13 n.17.

whose territory the investment is made[,]" id.  The Argentine Republic and the Italian Republic further agreed to treat awards issued following such arbitral proceedings as "final and binding" and to "comply with any such award in accordance with [ ] domestic laws and the relevant international conventions in force in both [c]ontracting [p]arties[.]"  Id.  Under this bilateral investment treaty, "[w]here [a] dispute is submitted to international arbitration, the investor may choose to refer the dispute [ ] to [ ] [t]he International Centre for the Settlement of Investment Disputes (['']ICSID['])[.]"  Id. (fifth alteration in original).  In 2007, in accordance with these provisions, "[the p]laintiff submitted its claims [that the defendant breached the bilateral investment treaty] to arbitration under the ICSID Convention[.]"  Id. ¶ 25.

An "arbitration proceeded in accordance with the ICSID Convention and ICSID [a]rbitration [r]ules."  Id. ¶ 28.  "[O]n June 21, 2011[,]" id. ¶ 31, an ICSID tribunal "found that . . . [the defendant] failed to treat [the p]laintiff's investment in a fair and equitable manner[,]" id. ¶ 33, and issued an award in favor of the plaintiff, see id. ¶ 31.  "As compensation for [the defendant's] breaches of the [t]reaty, the [t]ribunal awarded [the p]laintiff [ ] $21,294,000 [in United States currency] . . . before interest[,]" as well as "post-award interest . . . from July 11, 2006[,] until payment, at an annual rate of 6%."  Id. ¶ 34.  "On October 19, 2011, [the defendant] filed an application requesting annulment and stay of enforcement of the award."  Id. ¶ 35.  Following a hearing held in 2013 before an ad hoc committee, on January 24, 2014, the committee "unanimously decided to dismiss the entirety of the application for annulment, declare the stay terminated, and order that each [p]arty bear its own legal costs and expenses[.]"  Id.  Consequently, "the ICSID award became final with no further avenues of appeal."  Id.  "Despite [the plaintiff's] demands for payment and efforts to negotiate payment from [the defendant]" for at least two years, id. ¶ 45, "[t]he ICSID [a]ward remains unpaid[,]" id. ¶ 36.

### B.    Procedural History

The plaintiff filed its Complaint on September 20, 2021, <u>see</u> <u>id.</u> at 1, requesting that the Court, <u>inter alia</u>, enter an order and judgment: (1) "[r]ecognizing the ICSID [a]ward and enforcing the pecuniary obligations imposed by the ICSID [a]ward as if the ICSID [a]ward were a final judgment of a court of general jurisdiction of one of the several States;" and (2) "[e]ntering judgment in [the p]laintiff's favor in the amounts specified in the [a]ward[,]" <u>id.</u> ¶ 46. On August 8, 2022, the defendant filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Def.'s Mot. at 1.  The plaintiff then filed its opposition to the defendant's motion on August 22, 2022, <u>see</u> Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 1, ECF No. 10, and the defendant filed its reply on August 29, 2022, <u>see</u> Reply Memorandum of Law of the Republic of Argentina in Further Support of its Motion to Dismiss ("Def.'s Reply") at 1, ECF No. 11.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).  "[A]n affirmative defense[, <u>i.e.</u>, the statute of limitations,] may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are

clear from the face of the [C]omplaint." Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.    ANALYSIS

The defendant argues that the plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) "for failure to state a claim because the action is time-barred[,]" as the plaintiff "waited until September 20, 2021, more than ten years, to seek enforcement of a June 21, 2011 international arbitration award[.]" Def.'s Mot. at 1. "Although the federal statute authorizing district courts to enforce ICSID awards, [i.e., the Investment Disputes Act], does not contain its own statute of limitations," the defendant argues that "the most analogous statute[,]" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Federal

Arbitration Act"), 9 U.S.C. § 207, "provides for a three-year limitations period." Id.  In

opposition, the plaintiff asserts that the "statute of limitations must be drawn from the local law

of the forum state, . . . the District of Columbia," Pl.'s Opp'n at 2, and that "the most analogous

local statute of limitations is D.C. Code § 15-101(a), which provides that [District of Columbia]

court judgments are enforceable . . . for [a] period of twelve years[,]" id. at 13 (internal quotation

marks omitted).  Thus, the plaintiff argues that, "[b]ecause this action was filed within the

applicable [twelve]-year limitations period, the action is timely[,] and the Court should deny [the

defendant's] motion to dismiss." Id. at 10.  In reply, the defendant argues that, "even if the Court

were to look to state law from which to borrow the required limitations period," Def.'s Reply

at 2, "the most closely analogous [District of Columbia] statute" is the D.C. Arbitration Act,

D.C. Code § 16-4425, which "is also subject to a three-year limitations period[,]" Def.'s Reply

at 2.

The Court must therefore determine the appropriate statute of limitations to apply to a

claim brought pursuant to the Investment Disputes Act to assess whether the plaintiff's

Complaint was timely filed.

## A.     The Applicable Limitations Period Under the Investment Disputes Act

The ICSID Convention is "a multilateral treaty aimed at encouraging and facilitating

private foreign investment in developing countries." Micula v. Gov't of Romania ("Micula II"),

404 F. Supp. 3d 265, 269 (D.D.C. 2019) (quoting Mobil Cerro Negro, Ltd. v. Bolivarian

Republic of Venezuela, 863 F.3d 96, 100 (2d Cir. 2017)).  To accomplish this objective, the

ICSID Convention "provid[es] a legal framework and procedural mechanism to resolve disputes

between private investors and governments[,]" id., through which ICSID "convenes arbitration

panels to adjudicate disputes between international investors and host governments in

[c]ontracting [s]tates[,]" id. (internal quotation marks omitted). "The [ICSID] Convention . . . did not confer upon ICSID the power to enforce its [arbitral] awards[,]" but rather "left that function to its contracting states." Micula v. Gov't of Romania ("Micula I"), 104 F. Supp. 3d 42, 45 (D.D.C. 2015). Accordingly, Article 54(1) of the ICSID Convention provides:

> Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

ICSID Convention, ch. IV, § 6, art. 54(1).

The United States ratified the ICSID Convention on June 10, 1966. See Mobil Cerro, 863 F.3d at 101. Congress then passed the Investment Disputes Act, which "gave the ICSID Convention domestic effect[.]" Micula II, 404 F. Supp. 3d at 269; see Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89-532, § 3, 80 Stat. 344, 344 (1966). Section 3 of the Investment Disputes Act, codified at 22 U.S.C. § 1650a, addresses the enforcement of ICSID arbitral awards in the United States and provides in full:

> (a) Treaty rights; enforcement; full faith and credit; nonapplication of Federal Arbitration Act
>
> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. [§] 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.
>
> (b) Jurisdiction; amount in controversy
>
> The district courts of the United States (including the courts enumerated in section 460 of Title 28) shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy.

22 U.S.C. § 1650a.

The Investment Disputes Act does not contain a statute of limitations.  See generally id.; see also Blue Ridge Invs., LLC v. Republic of Argentina, 902 F. Supp. 2d 367, 386 (S.D.N.Y. 2012) ("Neither the ICSID Convention nor the legislation implementing the ICSID Convention contains a statute of limitations.").  In situations where a federal law lacks a statute of limitations, the Supreme Court has held that "[a court's] task is to 'borrow' the most suitable statute or other rule of timeliness from some other source[,]" typically "the most closely analogous statute of limitations under state law."  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 (1983); see also N. Star Steel Co. v. Thomas, 515 U.S. 29, 34 (1995) (describing state law as the "lender of first resort" from which to borrow a statute of limitations).

Although "resort to state law [ ] [is] the norm for borrowing of limitations periods[,]" DelCostello, 462 U.S. at 171, a limitations period may be borrowed from a federal law if that law "[(1)] clearly provides a closer analogy than available state statutes, and [ ] [(2)] the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," id. at 172.  This "closely circumscribed exception to the general rule that statutes of limitation are to be borrowed from state law[,]" Reed v. United Transp. Union, 488 U.S. 319, 324 (1989), seeks to ensure "that the importation of state law will not frustrate or interfere with the implementation of national policies[,]" Occidental Life Ins. Co. of Cal. v. Equal Emp. Opportunity Comm'n, 432 U.S. 355, 367 (1977); see Wilson v. Gov't of District of Columbia, 269 F.R.D. 8, 16 (D.D.C. 2010) (Walton, J.) ("The District of Columbia Circuit has stated that '[w]hen Congress has not established a statute of limitations for a federal cause of action, it is well-settled that federal courts may "borrow" one from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying

federal policies.'" (quoting Spiegler v. District of Columbia, 866 F.2d 461, 463–64 (D.C. Cir. 1989) (citation omitted))). However, "[r]ooted as it is in the expectations of Congress, the state-borrowing doctrine may not be lightly abandoned." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 356 (1991), superseded on other grounds, as stated in Merck & Co. v. Reynolds, 559 U.S. 633, 646–47 (2010) (internal quotation marks omitted).

Because the "general rule [is] that statutes of limitation are to be borrowed from state law[,]" Reed, 488 U.S. at 324, the Court will first consider the most closely analogous statutes of limitations under District of Columbia law,[3] before analyzing whether the Federal Arbitration Act "[(1)] clearly provides a closer analogy than available state statutes, and [ ] [(2)] the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," DelCostello, 462 U.S. at 172.

### 1. Whether District of Columbia Law Provides an Analogous Statute of Limitations

The plaintiff argues that the Court should borrow the twelve-year limitations period from the D.C. Uniform Enforcement of Foreign Judgments Act, D.C. Code § 15-101(a), because it is "by far the 'closest analog[ue]' to enforcement of an ICSID [a]ward." Pl.'s Opp'n at 14 (alteration in original) (quoting Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 150 (1987)). In support of its position, the plaintiff asserts that "Congress made the appropriate statute of limitations clear by directing federal courts to treat ICSID awards as 'final' state court 'judgment[s].'" Id. at 9 (alteration in original) (quoting 22 U.S.C. § 1650a). Thus, the plaintiff argues that D.C. Code § 15-101(a) is the appropriate statute from which to borrow because it is "the local statute of limitations for enforcing a money judgment[,]" id., and "it

---

[3] Courts routinely construe the meaning of state law in this context to include District of Columbia law. See, e.g., Cephas v. MVM, Inc., 520 F.3d 480, 490 (D.C. Cir. 2008) (concluding that "the local statute of limitations for a breach of contract action, D.C. Code § 12-301(7), [was] presumptively applicable[]" based on Reed).

would treat the [ICSID] Award as if it were a 'final judgment' of a [District of Columbia] local court[,]" id. at 13.

Although the defendant argues that the Court should borrow the three-year statute of limitations from the Federal Arbitration Act rather than borrow from District of Columbia statutory law, see Section III.A.2 infra, the defendant asserts that even "if the Court were to look to state law from which to borrow the required limitations period, the closest analogue under [District of Columbia] law[, the D.C. Arbitration Act,] would also provide for a three-year limitations period." Def.'s Mot. at 1 (citations omitted). The Court will assess each of these options in turn.

As noted above, the Investment Disputes Act provides that "[t]he pecuniary obligations imposed by [ ] an [ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). Because this Court must enforce an ICSID award "as if" the award were a final judgment of a state court, id., it follows that this Court should enforce the award through the same procedure by which the Court would enforce a state court judgment. See TECO Guat. Holdings, LLC v. Republic of Guatemala ("TECO Guatemala II"), 414 F. Supp. 3d 94, 102 (D.D.C. 2019) (noting that "the appropriate course of action for a district court petitioned to enforce an authenticated ICSID award is to treat it in the same manner as a state court judgment[,]"); see also Micula I, 104 F. Supp. 3d at 50 (finding that ICSID awards and state court judgments should be treated in a "parallel manner"); Tidewater Inv. SRL v. Bolivarian Republic of Venezuela ("Tidewater II"), No. 17-cv-1457 (TJK), 2018 WL 6605633 at *6 (D.D.C. Dec. 17, 2018) (finding that ICSID judgments must be recognized with the same

"exacting" full faith and credit obligation as state court judgments).[4]  "[T]he only available
method for converting an ICSID award into a domestic judgment [i]s through the same method
by which a state court judgment could be enforced in federal court—'a suit on the judgment as a
debt,' or in other words, a plenary proceeding[.]"  Micula I, 104 F. Supp. 3d at 49 (quoting
Cont'l Cas. Co. v. Argentine Republic, 893 F. Supp. 2d 747, 754 (E.D. Va. 2012)).

    Under District of Columbia law, awards containing "pecuniary obligations," or money
judgments, are enforced pursuant to D.C. Code § 15-101(a), which provides that

> every final judgment . . . for the payment of money rendered in the (1) United
> States District Court for the District of Columbia; or (2) Superior Court of the
> District of Columbia, . . . is enforceable, by execution issued thereon, for the
> period of twelve years only from the date when an execution might first be issued
> thereon[.]

D.C. Code § 15-101(a).[5]

    Recently, another member of this Court—in a suit raising identical issues under ICSCID
and responding to the defendant's same arguments—concluded that "D.C. Code § 15-101 is the
best option" under District of Columbia law.  Titan Consortium 1, LLC v. Argentine Republic,
No. 21-cv-2250 (JMC), 2024 WL 3858821, at *2 (D.D.C. Aug. 19, 2024).  Indeed, both of the
courts that have decided this precise issue have held that the most analogous state statute of
limitations is "that which governs the enforcement of a final money judgment from the court of

---

[4] The relevant legislative history also supports such an approach.  During a hearing on the bill which would
ultimately become the Investment Disputes Act, Senator J. William Fulbright offered a written analysis of the
proposed legislation that advised: "To give full faith and credit to an arbitral award as if it were a final judgment of a
court of one of the several [s]tates means that an action would have to be brought on the award in a United States
[d]istrict court just as an action would have to be brought in a United States [d]istrict court to enforce the final
judgment of a [s]tate court."  Mobil Cerro, 863 F.3d at 123 (emphasis omitted) (quoting 112 Cong. Rec. 13148,
13149 (daily ed. June 15, 1966)).

[5] D.C. Code § 12-307 applies a statute of limitations to "foreign judgments" and looks to the statute of limitations of
the jurisdiction in which the award was rendered.  However, as both parties note, because there is no such applicable
statute of limitations in the ICSID award context, D.C. Code § 12-307 cannot be applied.  See Titan Consortium 1,
LLC v. Argentine Republic, No. 21-cv-2250 (JMC), 2024 WL 3858821, at *4 n.3 (D.D.C. Aug. 19, 2024)
(concluding the same).

another state." Blue Ridge, 902 F. Supp. 2d at 388; see Titan Consortium 1, 2024 WL 3858821, at *2–3 ("Given the mandate of [22 U.S.C. §] 1650a to treat an ICSID award 'as if [it] were a final judgment of a court of general jurisdiction of one of the several States,' a law governing the enforcement of money judgments from D.C. Superior Court is a sensible choice.") (second alteration in original)).

Nonetheless, the defendant argues that "D.C. Code § 15-101[(a)] is inapposite for two related reasons." Def.'s Mot. at 10. First, the defendant argues that D.C. Code § 15-101(a) "simply establishes the lifespan of an already issued D.C. Superior Court judgment, not the deadline by which a judgment need be obtained." Id. at 11. Thus, the defendant argues that the statute does not apply here because the plaintiff is "seeking a judgment because it does not already hold an enforceable instrument." Id. (emphasis in original). Second, the defendant argues that the statutory language of the Investment Disputes Act "negate[s] D.C. Code § 15-101[(a)] serving as an analogous source of any time limit" because the Investment Disputes Act "requires this Court to treat an ICSID award not as a judgment of the D.C. Superior Court, but as a judgment of another state ('one of the several States') outside of this District." Id. at 11.

The Court is unpersuaded by the defendant's arguments. First, although the defendant argues that the Court should not borrow the statute of limitations from D.C. Code § 15-101(a) as the plaintiff is "seeking a judgment because it does not already hold an enforceable instrument[,]" id. at 10, as already noted, Congress's clear direction in the Investment Disputes Act is that Courts must enforce ICSID awards "as if" they were final judgments of state courts, reflecting the expectation of the framers of the ICSID Convention—including the United States Congress—that "the courts of a member nation will treat the award as final[,]" Micula II, 404 F. Supp. 3d at 276 (quoting Mobil Cerro, 863 F.3d at 121). Therefore, Congress has clearly

dictated that the plaintiff is not seeking a judgment but rather, in essence, is seeking the

enforcement of a final judgment.  The choice of D.C. Code § 15-101(a) accords with Congress'

direction and the clear procedural parallels between the two statutes.  Importantly, neither D.C.

Code § 15-101(a) nor the Investment Disputes Act—in the context of ICSID awards—provides

any procedure for confirmation, vacation, or modification of a state court judgment or award.

See generally D.C. Code § 15-101(a); 22 U.S.C. § 1650a(a); see also TECO Guatemala II, 414 F.

Supp. 3d at 101 ("The role of the courts of the [ICSID Convention's] member-states . . . is

limited to the 'recognition or enforcement' of an award." (citing ICSID Convention, ch. IV, § 6,

art. 54(1)).  Instead, "the Court's role in enforcing an ICSID arbitral award is [ ] exceptionally

limited," id., and "perfunctory[,]" Tidewater II, 2018 WL 6605633 at *6.  Because "[a] final

judgment of one state—or, for that matter, from [the] ICSID . . . qualifies for recognition

throughout the land[,] . . . the language of [the Investment Disputes Act] appears to envision no

role for this Court [in enforcing an ICSID award] beyond ensuring its own jurisdiction over th[e]

action and the validity of [the plaintiff]'s entitlement to any unpaid claims under the [a]ward."

Id.  The Court is "not permitted to examine an ICSID award's merits, its compliance with

international law, or the ICSID tribunal's jurisdiction to render the award; all it may do is

examine the judgment's authenticity and enforce the obligations imposed by the award."  Koch

Mins. Sàrl v. Bolivarian Republic of Venezuela, No. 17-cv-2559-ZMF, 2021 WL 3662938, at *2

(D.D.C. Aug. 18, 2021) (quoting TECO Guat. Holdings, LLC v. Republic of Guatemala ("TECO

Guatemala I"), No. 17-cv-102 (RDM), 2018 WL 4705794, at *2 (D.D.C. Sept. 30, 2018)

(cleaned up)).

        Second, the defendant's argument that the statutory language of the Investment Disputes

Act "negate[s] D.C. Code § 15-101(a) serving as an analogous source of any time limit[]"

because the Investment Disputes Act "requires this Court to treat an ICSID award not as a judgment of the D.C. Superior Court, but as a judgment of another state ('one of the several States') outside of this District[,]" Def.'s Mot. at 11, is similarly unavailing.  Although the defendant argues that "[the plaintiff] is asking this Court to rewrite [the Investment Disputes Act] to read that an ICSID award is to be treated as 'a final judgment of a court of general jurisdiction of the [s]tate or [t]erritory in which enforcement is sought[,]'" Def.'s Reply at 9, adopting the plaintiff's position will not constitute a rewrite of the statute but rather will amount to "borrow[ing] [a limitation period] from an analogous state cause of action," Wilson, 269 F.R.D. at 16 (quotation marks omitted) (citation omitted).  The inapplicability of the District of Columbia provision governing foreign judgments, see infra note 5, does not preclude the Court from borrowing a limitations period from a statute governing enforcement of in-state judgments, since "any analogies to [state] causes of action are bound to be imperfect."  Wilson v. Garcia, 471 U.S. 261, 272 (1985), superseded by statute on other grounds, as stated in Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369 (2004).  Even "important . . . differences, while noteworthy, [may] fail to render actions under [the statute from which the Court borrows a limitations period] sufficiently dissimilar to [the federal statute under which the plaintiff seeks to bring their claim] for purposes of borrowing an appropriate statute of limitations."  Spiegler, 866 F.2d at 465.  Since the statute from which the Court borrows need only be "sufficiently analogous[,]" id. at 466, the contradictions between D.C. Code § 15-101 and the Investment Disputes Act do not negate borrowing a limitations period from D.C. Code § 15-101.  See Agency Holding, 483 U.S. at 147 ("[T]he mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations.").

Because D.C. Code § 15-101(a) provides the limitations period for a claim filed in the "Superior Court for the District of Columbia," D.C. Code § 15-101(a), it comports with the mandate in the Investment Disputes Act to treat an ICSID award like "a final judgment of a court of general jurisdiction of one of the several States[,]" 22 U.S.C. § 1650a. So, too, does it adhere to the dictates of the ICSID Convention, which provides that "courts [of ratifying countries] shall treat [an ICSID] award as if it were a final judgment of the courts of a constituent state[,]" ICSID Convention, ch. IV, § 6, art. 54(1), rather than as a commercial arbitral award. Indeed, the court in <u>Titan Consortium 1</u> rejected the defendant's same argument, noting that "[r]egardless of potential 'geographic misalignment' (as [the defendant] calls it), . . . D.C. Code § 15-101 is the 'most closely analogous' and workable 'state' law[.]" 2024 WL 3858821, at *4.

The Court is also unpersuaded by the defendant's argument that "the closest analogue under D.C. law[ is the D.C. Arbitration Act, which] would also provide for the application of a three-year limitations period." Def.'s Mot. at 1 (citing D.C. Code § 16-4425; D.C. Code § 12-301(a)(8)). The D.C. Arbitration Act provides that a District of Columbia court shall enter a judgment "[u]pon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an [arbitral] award[.]" D.C. Code § 16-4425. Because the D.C. Arbitration Act itself lacks a statute of limitations, its limitations period is drawn from the catch-all District of Columbia statute of limitations for actions "for which a limitation is not otherwise specially prescribed—[three] years[.]" D.C. Code § 12-301(a)(8).

The Court concludes that the D.C. Arbitration Act is not the closest analogue for several reasons. As an initial matter, the D.C. Arbitration Act, which applies to commercial arbitral awards, <u>see</u> D.C. Code § 16-4425, provides for a much more robust role for courts than is the role provided in the Investment Disputes Act, which requires courts to give an ICSID award "the

same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States[,]" 22 U.S.C. § 1650a.  By contrast, the D.C. Arbitration Act provides processes for "vacating[,] . . . modifying, or correcting an award," D.C. Code § 16-4425, all of which contravene Congress' direction to treat ICSID awards as "final[,]"  22 U.S.C. § 1650a, and to give them "full faith and credit[,]" id.  Furthermore, the D.C. Arbitration Act conflicts with the language of the treaty Congress ratified, as the ICSID Convention directs courts of member states to "treat [an ICSID] award as if it were a final judgment of the courts of a constituent state[,]" ICSID Convention, ch. IV, § 6, art. 54(1), not as an arbitral award confirmed within the courts of a constituent state, which, pursuant to the D.C. Arbitration Act, courts are compelled to "enter a judgment in conformity therewith[,]" D.C. Code §16-4425; see Micula II, 404 F. Supp. 3d at 275 (emphasizing that a federal court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award" (quoting Mobil Cerro, 863 F.2d at 102)).  Finally, as noted earlier, the statute of limitations applicable to the D.C. Arbitration Act is actually the catch-all statute of limitations for actions "for which a limitation is not otherwise specially prescribed[,]" D.C. Code § 12-301(8), and the Supreme Court has concluded that "it [i]s unlikely that Congress would have intended [ ] a [catch-all] statute of limitations to apply[]" when borrowing a statute of limitations for a federal statute, Agency Holding, 483 U.S. at 153.  Therefore, the Court concludes that the D.C. Arbitration Act is not more appropriate than the D.C. Uniform Enforcement of Foreign Judgments Act as the statute from which to borrow a statute of limitations for a lawsuit pursuant to the Investment Disputes Act.

In sum, the Court concludes—as did the court in <u>Titan Consortium 1</u>—that D.C. Code § 15-101 "is the best option[]" from which to borrow a statute of limitations period for a suit brought pursuant to the Investment Disputes Act.  2024 WL 3858821, at *2.

**2.  Whether the Court Should Nonetheless Borrow the Statute of Limitations from the Federal Arbitration Act**

Having concluded that D.C. Code § 15-101(a) is the most closely analogous state statute, the Court will now consider whether—despite the availability of this state law analogue—the Court should nonetheless rely on the Federal Arbitration Act, as the defendant argues it should, because it "[(1) clearly provides a closer analogy than available state statutes, and [ ] [(2) the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," <u>DelCostello</u>, 462 U.S. at 172.

The defendant argues that the Court should borrow the three-year statute of limitations applicable to confirming an international commercial arbitral award or the enforcement of a foreign commercial arbitral award under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 207, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), because this statute "provides the closest analogy [to the Investment Disputes Act] and best serves the underlying policy interests."  Def.'s Mot. at 5.  The plaintiff responds that applying that statute of limitations is inappropriate in light of the presumption of borrowing from state law because: (1) the New York Convention applies to "confirming" a commercial arbitral award, rather than enforcing an existing award, <u>see</u> Pl.'s Opp'n at 18; and (2) application of the New York Convention's three-year statute of limitations would both "conflict with the ICSID Convention and [§] 1650a[,]" <u>id.</u> at 21, and "immensely complicate enforcement[]" of ICSID awards, <u>id.</u> at 22.

The Court is unpersuaded for several reasons by the defendant's justifications for a departure from the presumption of borrowing the statute of limitations from state law.  First, the defendant argues that "the federal limitations period for confirmation of an arbitral award provides a closer analogue than a statute prescribing for how long a judgment that has already been rendered may be enforced, as [the plaintiff] contends in relying on D.C. Code § 15-101[(a)]."  Def.'s Reply at 8.  However, there are several reasons why the Federal Arbitration Act, which governs commercial arbitration, is not "clearly . . . a closer analogy" than D.C. Code § 15-101(a).  DelCostello, 462 U.S. at 172.  First, as noted above, the role of courts in enforcing ICSID awards is "exceptionally limited[.]"  TECO Guatemala II, 414 F. Supp. 3d at 101.  By contrast, the Federal Arbitration Act—like the D.C. Arbitration Act—provides for the modification and vacation of arbitral awards, which distinguishes its procedures from those of the Investment Disputes Act.  For example, the Federal Arbitration Act permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  Courts can therefore "modify and correct" arbitral awards under the Federal Arbitration Act, 9 U.S.C. § 11, or vacate them entirely, see 9 U.S.C. § 10, including when based on "generally applicable contract defenses[] such as fraud, duress, or unconscionability," Drs.' Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).  This authorization conflicts with the ICSID Convention's provision that an ICSID award must be enforced within a given contracting state "as if it were a final judgment of a court in that [s]tate[,]" ICSID Convention, ch. IV, § 6, art. 54(1), as well as the clear directive in the Investment Disputes Act that these awards shall be "enforced and . . . given the same full faith

and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States[,]" 22 U.S.C. § 1650a.[6]

However, even assuming <u>arguendo</u> that the Federal Arbitration Act did provide a closer analogue statute of limitations, the defendant has not shown that "the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," <u>DelCostello</u>, 462 U.S. at 172, such that the Court should depart from the presumption of borrowing from state law.  The defendant argues that there is a strong interest in the federal enforcement of ICSID awards, "[t]he strongest indication of [which] . . . is [Congress's] determination to vest jurisdiction over the conversion of an unenforceable ICSID arbitral award into an enforceable court judgment exclusively in the federal courts, . . . denying state courts and presumably state law any role in the enforcement or non-enforcement of an ICSID award."  Def.'s Mot. at 6 (emphasis omitted).  Moreover, the defendant argues that "if state law were applied, ICSID award enforcement proceedings in different states would be subject to dramatically different, and unpredictable, statutes of limitations."  <u>Id.</u> at 8.  Finally, the defendant argues that "because ICSID arbitrations frequently involve neither a U.S. national as [a] plaintiff nor the United States as [a] defendant, there often will be no substantive nexus between an ICSID award and any U.S. state and thus no particular reason to import any

---

[6] The defendant argues that "[a]lthough [the court in] <u>Titan[ Consortium 1]</u> sought to minimize the closeness of the analog[ue] between [the] FAA, Chapter 2 and § 1650a by noting the former references 'confirming' awards and the latter 'enforcing' them, [the court in] <u>Titan[ Consortium 1]</u> ignored that 28 U.S.C. § 1605(a)(6), the sole basis for the Court's exercise of subject matter jurisdiction over this matter, provides for jurisdiction 'for an action <u>to confirm</u> an award' . . . made pursuant to an agreement to arbitrate."  Response to Notice of Supplemental Authority ("Def.'s Resp. to Pl.'s 2d Notice of Suppl. Authority") at 3, ECF No. 15 (emphasis in original).  Thus, according to the defendant, "if [the plaintiff] insists that § 1605(a)(6) provides the basis for the Court's exercise of subject matter jurisdiction in this case, it cannot deny that this is in fact an action to 'confirm' an arbitral award and [is] thus analogous to a proceeding brought under § 207 of the FAA."  <u>Id.</u>  As the Court has found, however, whatever the difference in nomenclature may be, it is clear as a practical matter that the Federal Arbitration Act process diverges significantly from the "exceptionally limited" role courts have in the ICSID context.  <u>Tidewater II</u>, 2018 WL 6605633 at *6.

particular state's limitations period, offering a further reason to borrow from analogous federal, rather than state, law." Id. at 9.

To be sure, the Court appreciates the federal interest in uniformity in enforcing ICSID awards, see Mobil Cerro, 863 F.3d at 118 (noting a need in ICSID enforcement actions for "national uniformity in procedure"), and often there may be no substantive nexus between an ICSID award and any particular U.S. state. But the federal interest in uniformity in ICSID enforcement actions is substantially served by the Foreign Sovereign Immunities Act, see 28 U.S.C. § 1605 ("the FSIA"), which provides the "sole basis for obtaining jurisdiction over a foreign state" in U.S. courts, Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 428 (1989), and whose "arbitral award exception" to its general grant of immunity for foreign states has been "routinely" applied to ICSID awards, Tidewater II, 2018 WL 6605633 at *4. As both parties acknowledge, actions to enforce ICSID awards must comply with the FSIA's procedural requirements, see Def.'s Reply at 6; Pl.'s Opp'n at 26–27 n.13, which advance this interest in uniformity by "ensuring the United States' consistency of approach with respect to federal courts' interactions with foreign sovereigns[,]" Mobil Cerro, 863 F.3d at 100.[7]

The FSIA imposes uniformity on ICSID enforcement actions primarily through its venue provisions. Because "claims of foreign states to immunity [are exclusively] . . . decided by the courts of the United States . . . in conformity with the principles set forth in [the FSIA,]" 28 U.S.C. § 1602, the FSIA provides the only four permissible choices of venue for a civil action against a foreign state: (1) a "judicial district in which a substantial part of the events or

---

[7] Although the FSIA procedures were enacted ten years after the ratification of ICSID in 1966, see 28 U.S.C. § 1602 (noting that the statute was "[a]dded [to the United States Code on] . . . Oct. 21, 1976"), and therefore Congress could not have been relying on it to achieve uniformity in ICSID enforcement actions when the Investment Disputes Act was passed, that does not change the FSIA's effect on the uniformity of contemporary ICSID enforcement proceedings.

omissions giving rise to the claim occurred," 28 U.S.C. § 1391(f); (2) "any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under [§] 1605(b)[,]" id.; (3) "any judicial district in which the agency or instrumentality is licensed to do business . . . if the action is brought against an agency or instrumentality of a foreign state[,]" id.; or (4) "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof[,]" id.  In practice, ICSID enforcement actions are typically not brought against an "agency or instrumentality[,]" id. § 1391(f)(3), nor is an ICSID enforcement action a "suit in admiralty[,]" 28 U.S.C. § 1605(b), for which venue is permissible under § 1391(f)(2).  And, ICSID arbitrations against the United States, for which venue would be proper under the "events or omissions" clause of 28 U.S.C. § 1391(f)(1), are relatively rare.  See George Kahale III, Rethinking ISDS, 44 Brook. J. Int. L. 11, 17 (2018) ("[D]espite at least one close call, the United States has not yet experienced a significant setback at the hands of an investor in a treaty claim[.]") (footnote omitted).  As the plaintiff correctly notes, by far the most commonly applicable provision is 28 U.S.C. § 1391(f)(4), which consistently channels ICSID enforcement actions to this Court.  See, e.g., Cont'l Cas., 893 F. Supp. 2d at 748 (transferring an ICSID enforcement action to this Court); Tidewater Inv. SRL v. Bolivarian Republic of Venezuela ("Tidewater I"), No. 15-cv-1960, 2018 WL 3860270 at *1 (S.D.N.Y. Jan. 22, 2018) (dismissing proceeding which was refiled in this Court); see also Pl.'s Opp'n at 26 (collecting cases).  This channeling promotes the federal interest in the uniformity of ICSID enforcement actions.[8]

---

[8] Although a defendant may waive its venue defense, see, e.g., Blue Ridge, 902 F. Supp. 2d 367, Notice of Motion, ECF No. 18 (venue defense waived by defendant by omission from initial motion to dismiss), the Court is not persuaded that waivers are sufficiently frequent to undermine the FSIA's effects on procedural uniformity.

Given these existing mechanisms for procedural uniformity in enforcing ICSID awards, the defendant's concerns about uniformity do not trump the "general rule that statutes of limitation are to be borrowed from state law," Reed, 488 U.S. at 324, which is set aside only if "the federal policies at stake and the practicalities of litigation make [the federal] rule a significantly more appropriate vehicle [than state law] for interstitial lawmaking," DelCostello, 462 U.S. at 172.  Although "the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different [s]tates for the same federal action, . . . . th[is] [is] just the cost[] of the rule itself[.]"  N. Star, 515 U.S. at 36.

Further, as both of the courts that have decided this issue have concluded, borrowing a shorter statute of limitations would undermine the efficiency of the ICSID process.  See Blue Ridge, 902 F. Supp. 2d at 388 n.17 (noting that borrowing a one-year statute of limitations "would lead to absurd results in the context of an ICSID award[]" because the "ICSID Convention provides for a stay of enforcement of an award pending resolution of either party's annulment request[,]" which "must be filed within 120 days of an award[]"); Titan Consortium 1, 2024 WL 3858821, at *3 (concluding that applying the Federal Arbitration Act "does not promote efficiency" given the "practicalities of ICSID litigation[,]" namely, the extended duration of post-award proceedings).  In light of the "practicalities of [ICSID] litigation[,]" the Court concludes that the Federal Arbitration Act is not "a significantly more appropriate vehicle for interstitial lawmaking," DelCostello, 462 U.S. at 172.

Therefore, the Court concludes that the policy concerns expressed by the defendant do not defeat the presumption against borrowing a statute of limitations from federal law.  Accordingly, the Court will apply the twelve-year statute of limitations contained in D.C. Code § 15-101(a) in determining whether the plaintiff's complaint was timely filed.

**B.     Whether the Plaintiff's Complaint Was Timely Filed**

Having concluded that the D.C. Uniform Enforcement of Foreign Judgments Act, D.C. Code § 15-101(a), is the appropriate statute from which to borrow a statute of limitations period, the Court finally determines whether the plaintiff's Complaint was timely filed.  As discussed above, D.C. Code § 15-101(a) provides a twelve-year statute of limitations period.  See D.C. Code § 15-101(a) ("[E]very final judgment or final decree for the payment of money rendered in the . . . United States District Court for the District of Columbia . . . is enforceable, by execution issued thereon, for the period of twelve years only from the date when an execution might first be issued thereon, or from the date of the last order of revival thereof.").  Here, "[t]he [t]ribunal issued the ICSID [a]ward [to the plaintiff] on June 21, 2011[,]" Compl. ¶ 31, and the plaintiff filed its Complaint approximately ten years later on September 20, 2021, see id. at 1.  Because the plaintiff filed its Complaint in 2021, see id., asking the Court to enforce an arbitral award which was issued ten years earlier in 2011, see id., the Complaint is not time-barred, and the Court must therefore deny the defendant's motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion to dismiss.

**SO ORDERED** this 19th day of November, 2024.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.